Randall BLACK et al.,
Plaintiffs-Appellants,

v.

Abraham BEAME, Individually and as Mayor of the City of New York et al., Defendants-Appellees.

No. 638, Docket 76–7478.

United States Court of Appeals, Second Circuit.

Argued Feb. 15, 1977.

Decided Feb. 24, 1977.

Marcia Robinson Lowry, New York City, Children's Rights Project, New York Civil Liberties Union (Steven R. Shapiro, New York City, on the brief), for plaintiffs-appellants.

Carolyn E. Demarest, New York City (W. Bernard Richland, Corp. Counsel for the City of New York and L. Kevin Sheridan, New York City, on the brief), for Municipal defendant appellees except Christian and Reichardt.

Mark C. Rutzick, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for State defendants-appellees.

Jeanne Hollingsworth, New York City (Edward W. Norton, Gen. Counsel, New York City Housing Authority, New York City, on the brief), for defendant-appellees Joseph J. Christian and John J. Reichardt.

Alfred E. Schretter, New York City (Davis, Polk & Wardwell and Richard E. Nolan, Thomas J. Aquilino, Jr. and Jon Yard Arnason, New York City, on the brief), for defendant-appellee Monsignor Edmund F. Fogarty.

Before LUMBARD and TIMBERS, Circuit Judges, and KNAPP, District Judge.[*]

LUMBARD, Circuit Judge:

This is an appeal from an order by Judge Milton Pollack of the Southern District dismissing plaintiffs' complaint on its face. Plaintiffs are nine brothers and sisters who allege that city and state welfare officials have not been making a conscientious effort to keep their family together, and that this violates the fourteenth amendment and the Social Security Act. We affirm on the ground that plaintiffs have failed to state a claim upon which relief can be granted.

Plaintiffs' complaint, filed in November 1975, sets forth the following facts. Mrs. Frances Black, the mother of all the plaintiffs, lives with five of them in a four-bedroom apartment at a public housing project on the upper west side of Manhattan.[1] She and her children have been receiving AFDC benefits since before 1969.[2] The other four plaintiffs have since 1971 been in foster care at the Mission of the Immaculate Virgin on Staten Island, along with approximately 700 other children. Mrs. Black says she agreed to the foster placement only because she had no practical alternative,

especially in view of the cramped quarters in which her family must live. It is also alleged that Mrs. Black's welfare benefits and services have been delayed and denied at times and that she has been humiliated and intimidated in her attempts to secure adequate public assistance and housing.

Plaintiffs claimed that the state had violated the Constitution and the Social Security Act by misallocating welfare resources and thereby failing to provide housing and services sufficient to keep the Black family together. As an indication of the nature of the relief they were seeking, plaintiffs proposed a plan aimed at reuniting the Black family and putting it back on its feet. The principal ingredient was to be a part-time social worker, who could aid Mrs. Black in locating a larger home, finding jobs for herself and her older children, and coping with other transitional problems. The plan allegedly would cost less than what the state is presently expending to maintain the four Black children in foster care.

Upon motion of defendants Judge Pollack dismissed the complaint under Rules 12(b)(1) & (6) on September 1, 1976. 419 F.Supp. 599. He found plaintiffs' constitutional claims to be frivolous and dismissed the statutory claims for lack of jurisdiction.

Appellants argue that once the state decides to offer public assistance to the poor, it is constitutionally required to do so in a manner that is not unnecessarily destructive of family unity. There is a long line of precedents indicating that the government may not unreasonably interfere with familial privacy and the freedom to conceive and raise one's children as one wishes. See *Meyer v. Nebraska*, 262 U.S. 390, 399–401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (right to have child learn foreign language); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (right to send child to private school); *Skinner v. Oklahoma*,

---

[*] Sitting by designation

[1.] From an affidavit submitted by the New York City Housing Authority, it appears that Mrs. Black's present household also includes two other children and three grandchildren.

[2.] Between 1971 and 1975 Mrs. Black worked for the New York Telephone Company. Since being terminated in that job she has been unemployed.

316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right not to be sterilized); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to contraception); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (right of father to custody of child); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (right to abortion). Recognizing that the state has no constitutional obligation to support the Black family, plaintiffs rely on the doctrine that where a fundamental right is in jeopardy the courts must strictly scrutinize state actions to ensure that the "least restrictive alternative" is being used. See, e. g., *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) (free speech); *Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964) (foreign travel); *Griswold v. Connecticut, supra*, 381 U.S. at 485, 85 S.Ct. 1678 (contraception); *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (interstate travel and right to vote); *Covington v. Harris*, 136 U.S.App.D.C. 35, 419 F.2d 617, 623–24 (1969) (rights to civilly committed mentally-ill).

■ Such judicial scrutiny is neither practicable nor appropriate in this case. The Supreme Court has specifically rejected the applicability of the "least restrictive alternative" doctrine to welfare regulations and their effects on family integrity. In *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Court turned down a challenge on equal protection grounds to a Maryland statute which placed a ceiling on the AFDC grant available to a single family irrespective of the number or numbers of the family. The *Dandridge* plaintiffs had claimed that, among its other faults, the statute led to the destruction of families by encouraging the "farming out" of younger children to relatives not receiving the maximum grant, id. at 477, 90 S.Ct. 1153, but the Court held

that as long as the state's approach had a rational basis it could not be invalidated:

> We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might legally espouse, or that a more just and humane system could not be devised. . . .
> But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. . . .
> [T]he Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

Id. at 487, 90 S.Ct. at 1162. Thus, the fourteenth amendment does not afford a basis for a court to engage in the sorts of fiscal and psychological speculations that would be required before such competing contentions as are made in this case can be resolved.

■ Plaintiffs also seek to premise their argument on statutory grounds. At the outset we must reject the district court's decision to dismiss these federal statutory claims for lack of jurisdiction. General federal question jurisdiction under 28 U.S.C. § 1331 does supply a basis for jurisdiction here. Plaintiffs have alleged over $10,000 in controversy.[3] It is true that speculative allegations of indirect, nonpecuniary benefits may not be used to meet the amount in controversy requirement. See, e. g., *Rosado v. Wyman*, 414 F.2d 170, 177–78 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). In this case, however, the value to the plaintiffs of the relief they are seeking clearly exceeds $10,000. Although—as they have taken special pains to point out— plaintiffs are not seeking any additional state expenditures, they are seeking to redirect funds that do amount to more than $10,000. The cost for the social worker whose assistance they seek is estimated at

---

**3.** Although plaintiffs' complaint here could conceivably be read as alleging that only their constitutional claim involved $10,000 in controversy, such a reading would be illogical since

the relief being sought on the statutory claim is essentially identical to that being sought on the constitutional claims. Courts should not strain to dismiss on the basis of pleading nuances.

$9,000 per year. Moreover, it is obvious that plaintiffs' interest in family services is "common and undivided," and that aggregation of their individual claims is therefore proper under *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Thus, we conclude that there is jurisdiction over plaintiffs' statutory claim.

 On the merits, however, we find plaintiffs' statutory analysis unpersuasive. Plaintiffs place their principal reliance on 42 U.S.C. § 601, which says that a goal of the AFDC program is "encouraging the care of dependent children in their own homes or in the homes of relatives  .  .  . to help maintain and strengthen family life." See also S.Rep.No. 628, 74th Cong., 1st Sess. 13 (1935) (aim is "to keep  .  .  . young children with their mother in their own home, thus preventing the necessity of placing [those] children in an institution"). In addition, 42 U.S.C. § 602(a)(15) requires each state to submit to the Department of Health, Education and Welfare a plan "for preventing or reducing the incidence of births out of wedlock and otherwise strengthening family life."

We do not believe that these, or any of the other Social Security Act provisions cited by appellants, could have been intended to create a cause of action under the circumstances here alleged. Since the concerns expressed by the *Dandridge* Court are also applicable to a statutorily-based action, the federal courts should not interject themselves amidst the complications of state welfare administration unless expressly so directed by Congress. General statements of goals in the federal welfare statutes do not give individual welfare recipients the right to federal court review of the cost-effectiveness of state welfare policies.[4]

For the foregoing reasons we affirm the decision of the district court dismissing the complaint.[5]

---

4. Furthermore, appellants' position conflicts with the view of Congress and the states that foster care can serve to strengthen and preserve, rather than destroy, family integrity. In *Ramos v. Montgomery*, 313 F.Supp. 1179 (S.D. Cal.1970) (three-judge court), aff'd mem., 400 U.S. 1003, 91 S.Ct. 572, 27 L.Ed.2d 618 (1971), the court rejected a challenge to the allotment of more money for foster care than for care in the natural parent's home. That challenge, like the one in the instant case, was based on the premise that "maintenance of the family structure is a paramount purpose behind the federal [AFDC] program." 313 F.Supp. at 1181. In rejecting the challenge while accepting the premise the court stated: "A reduction in foster home care aid would threaten the continued existence of the entire program and jeopardize the welfare of thousands of children." Id. at 1183.

5. Plaintiffs also claim that they have been subjected to unreasonable administrative delays and harassment. However, even if this states a cause of action under 42 U.S.C. § 602(a)(10) (which requires that "aid be furnished with reasonable promptness to all eligible individuals"), it is clear that $10,000 is not in controversy on this claim. Nor can plaintiffs bootstrap such a statutory claim into a constitutional one through the due process clause, since there has been no allegation that delays have resulted in substantial deprivations of benefits to which the family is statutorily entitled. Thus, jurisdiction is not available under either 28 U.S.C. § 1331 or 28 U.S.C. § 1343(3). See generally *Andrews v. Maher*, 525 F.2d 113, 118–19 (2d Cir. 1975).