Jay Andrew JOYNER, et al., Plaintiffs,

v.

James DUMPSON, et al., Defendants.

No. 75 Civ. 35.

United States District Court,
S. D. New York.

Feb. 10, 1982.

Marcia Robinson Lowry, George Kannar, American Civil Liberties Union, New York City, for plaintiffs; Steven R. Shapiro, New York City, of counsel.

Frederick A. O. Schwarz, Corp. Counsel, New York City, for defendants; Pamela Gaskins, New York City, of counsel.

Robert Abrams, Atty. Gen., State of New York, New York City, for State; Amy Juviler, Asst. Atty. Gen., New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

At issue in this action is the constitutionality of a New York statute, N.Y. Social Services Law § 358–a (McKinney Supp. 1980–1981), which requires that parents of children in need of treatment and supervision outside their homes relinquish custody of their children to the state as a condition

of admission of the children to residential care facilities at state expense. Plaintiffs, certified as the class of New York children whose parents cannot afford the cost of necessary special services outside their homes,[1] seek a declaratory judgment that the statutory scheme on its face and as applied violates plaintiffs' rights under the First, Ninth and Fourteenth Amendments to the United States Constitution, Title IV of the Social Security Act, 42 U.S.C. § 601 et seq., and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Both plaintiffs and the defendant New York State and New York City officials[2] have moved for partial summary judgment.[3]

### Facts

The statutory process challenged by plaintiffs is activated when a parent who finds himself unable to care for or supervise a problem child at home[4] seeks to place the

---

1. The plaintiff class was defined in a certification order entered by Judge Duffy on October 21, 1975 as:

    all children in the state of New York who are in need of special services outside their home, whose parents cannot afford the full cost of those services, and who cannot receive such services unless their parents relinquish their custody to the Commissioner of Social Services of the local social services district and consent to a court finding that they are unable to care for their children.

2. Named as defendants are: (1) James Dumpson, the Administrator of the New York City Human Resources Administration and Commissioner of the New York City Department of Social Services, responsible for the administration of the New York City welfare district and the children in that district in need of assistance; (2) Carol Parry, the Assistant Administrator of Special Services for Children, an agency within the New York City Human Resources Administration and the Department of Social Services, which includes the Bureau of Child Welfare and which is directly responsible for providing services to New York City children in need of assistance; (3) Bernard Shapiro, the Executive Director of the New York State Board of Social Welfare, responsible for regulating the provisions of services to children in need of assistance state-wide; and (4) Abe Lavine, the Commissioner of the New York State Department of Social Services, responsible for providing public welfare services for the State of New York, including the plaintiff class.

3. These motions are presented in the following context.

    The parties originally cross-moved for summary judgment as to all but one of the claims in the second amended complaint. The parties subsequently entered into a stipulation which provides in pertinent part:

    It is hereby stipulated and agreed by and between the undersigned parties that the sole legal issue to be decided in this case is whether it may lawfully be required that the custody of those children in New York State who require services in addition to education outside their homes which their parents cannot provide be transferred to the temporary custody of the local social services commissioner pursuant to Social Services Law §§ 358–a, 384–a and rules, regulations and administrative directive pursuant thereto; and

    It is further stipulated and agreed that resolution of this issue does not depend upon the particular allegations by plaintiff Jay Andrew Joyner as to his ability to be educated in the New York City schools; and

    It is further stipulated and agreed that the parties disagree on whether the above-described condition violates the United States Constitution, the federal Social Security Act and, insofar as this condition affects handicapped children, whether it violates § 504 of the Rehabilitation Act of 1973 . . . .

    Although the complaint was thereafter amended twice again, the substance of the dispute, as reflected in the stipulation entered into by the parties, has not changed since the motion papers were originally submitted. The court shall consider the motion papers previously submitted by the parties as applicable to the fourth amended complaint.

    The challenged sections of New York Social Services Law have also been amended several times since this action was commenced. It is not disputed that the amendments tend to increase the protection afforded plaintiffs. Several of the amendments have been cited and discussed by the parties in their supplemental briefs. Since this is an action for declaratory not monetary relief, and since the parties have apparently recognized and conceded the applicability of the amendments, the court shall consider the statute as amended, and all citations are to the statute as most recently amended. In view of the court's finding that § 358–a as amended violates plaintiffs' federal statutory and constitutional rights, there is no need to consider earlier versions of § 358–a. The court's conclusions apply *a fortiori* to the statute prior to the amendments.

4. The nature of plaintiffs' handicaps is disputed. Both of the named plaintiffs are emotionally disturbed; both have had difficulties in school. Defendants assert that plaintiffs are

child in a residential treatment center at state expense. The process by which a parent relinquishes care and custody of his child to the state is two-fold: first, the parent and a local social services official must enter into a written agreement pursuant to N.Y. Social Services Law § 384–a (McKinney Supp. 1981–1982) transferring care and custody to the social services agency; and second, the social services official must initiate judicial proceedings to obtain approval of the transfer instrument pursuant to § 358–a.[5]

Section 384–a(2)(a) provides that placement of the child shall be under the written terms and conditions mutually agreed upon by parent and social services representative. If the transfer instrument designates return of the child for a certain date or event and the agency fails to return the child at that time, or if the parent requests that the child be returned prior to the specified date and the agency refuses or fails to act, the parent's remedy is to petition the family court or to seek a writ of habeas corpus in the supreme court. If the instrument does not specify a return date, the parent may request return at any time and the agency must then either return the child within twenty days or seek a court order within that time to retain care and custody. *See* §§ 358–a(7) and 384–a(2)(a). The instrument must advise the parent in lay terms *inter alia*: that a return date may be specified by the instrument; that the parent has the right to supportive services, to visit the child, and to have the child returned in accordance with the terms of the instrument; that the parent has the right at any time to consult an attorney; and that the parent has the obligation to visit the child and plan for the child's future. § 384–a(2)(c). Since the 1976 amendments to the statute, the instrument may not include a waiver by the parent of notice of the family court proceedings for approval of the instrument. § 358–a(4). Although the parent may waive a family court hearing, such waiver must be in an instrument separate from that transferring custody if the transfer is pursuant to § 384–a. § 358–a(5). The transfer instrument ("Form W–864") presented to the parents of the named plaintiffs in this action contained waivers of notice and hearing now void under the amended statute and also contained a statement that "[p]lacement is required because I (we) am (are) unable to make adequate provision for the support, maintenance and supervision of the child in his (her) own home or with relatives or friends."

Upon execution of the transfer instrument, if the social services official believes the child is likely to remain in state care in excess of thirty days, the official must petition the local family court judge to approve the instrument. If the judge is satisfied that the parent executed the instrument knowingly and voluntarily and because he

not uneducable and that they are in need of residential facilities only because of problems at home. Plaintiffs assert that they seek placement in residential treatment centers because of their need for specialized education as well as their difficulties at home. The dispute is not material to the issues decisive of the parties' cross-motions for summary judgment.

5. The essential factual allegation of this action is that plaintiffs will not be admitted to residential treatment centers at state expense unless their parents relinquish custody to the state. The fact of this requirement is apparently conceded by defendants. The court nevertheless notes that nowhere in §§ 358–a and 384–a is it stated that transfer of custody is the exclusive means of admission to residential facilities at state expense. The court further observes that with the exception of the first sentence of § 358–a(1), where there is a reference to the transfer of "the care and custody of a child *as a public charge* by means of an instrument executed pursuant to the provisions of section three hundred eighty-four-a . . ." (emphasis added), there is no indication that the challenged provisions apply only to those children whose parents cannot afford the cost of residential treatment. Before the 1978 amendments to § 358–a, the relevant requirements of that section applied only where the child was eligible for federal aid to dependent children. Section 358–a as amended contains no reference to eligibility for federal aid. Nevertheless, the fact that these sections are applicable only where placement is at state expense is, again, apparently acknowledged by defendants and may readily be deduced from their statutory context in Titles 10 ("Aid to Dependent Children") and 11 ("Medical Assistance for Needy Persons") of N. Y. Social Services Law.

would be "unable to make adequate provision for the care, maintenance and supervision" of the child in his home, and that the requirements of § 384–a, if applicable, have been satisfied, and if the judge then determines that "the best interest and welfare of the child would be promoted by removal of the child from such home, and that it would be contrary to the welfare of such child for him to continue in such home," the judge "shall thereupon grant the petition and approve such instrument and the transfer of the ... care and custody of such child to such social services official...." § 358–a(3). The statute further provides that any order of a family court judge granting or denying a petition for transfer or return of custody shall be appealable. § 358–a(8).

Once the transfer instrument is executed and the child placed in a residential facility, the parent need not be consulted regarding changes in the method or location of treatment. If the parent opposes any decision made by the social services agency, the parent's only remedy, beyond complaining to the social services official, is to petition the family court or supreme court. Plaintiffs assert, and defendants have not submitted affidavits otherwise contending, that an unspecified number of parents are deterred from placing their children in residential treatment centers by the prerequisite that custody of their children be transferred to the state.

For the purposes of these motions for summary judgment, the allegations particular to the two named plaintiffs need not be set forth. Plaintiffs do not contend that defendants deviated substantially from their statutory mandate.

## Discussion

■ It is well established that when a statute is challenged on both statutory and constitutional bases, the court must consider the statutory challenge before deciding the constitutional issue. *See, e.g., Harris v. McRae*, 448 U.S. 297, 306–07, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980); *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 582, 99 S.Ct. 1355, 1364, 59 L.Ed.2d 587 (1979). The court therefore first addresses plaintiffs' claims under the Social Security Act and the Rehabilitation Act of 1973.

## I.

■ Plaintiffs contend that the New York statutory scheme violates plaintiffs' rights under Title IV of the federal Social Security Act, 42 U.S.C. § 601 *et seq.*, by conditioning the receipt of needed services on transfer of child custody. Plaintiffs' claim is based upon the broad scope and intent of Title IV to provide relief to needy families through the Aid to Families with Dependent Children ("AFDC") program. In support of their contention that defendants are in violation of Title IV, plaintiffs cite several statements in the legislative history as well as particular provisions of the Social Security Act, *e.g.*, 42 U.S.C. §§ 601, 606, 608(f), which confirm the undeniable proposition that a principal purpose of the Social Security Act is "to maintain and strengthen family life." 42 U.S.C. § 601. Plaintiffs also refer the court to certain other statutes such as the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 672(f), and the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 *et seq.*, as evidence of Congressional concern for the stability and permanence of familial relations. *See also Ramos v. Montgomery*, 313 F.Supp. 1179, 1181 (S.D.Cal.1970), *aff'd*, 400 U.S. 1003, 91 S.Ct. 572, 27 L.Ed.2d 618 (1971). It is, of course, uncontested that once a state elects, as New York has elected, to participate in the AFDC program it must comply with applicable federal law and regulations. *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Hagans v. Lavine*, 415 U.S. 528, 530, 94 S.Ct. 1372, 1375, 39 L.Ed.2d 577 (1974). Broad professions of Congressional support for the integrity of family life do not, however, establish that plaintiffs have a statutory entitlement to placement in residential facilities at state expense without the prerequisite of transfer of child custody. *See Black v. Beame*, 550 F.2d 815, 818 (2d Cir. 1977); *Child v. Beame*, 412 F.Supp. 593, 604 (S.D.N.Y.1976). Plaintiffs' claim under the

federal Social Security Act is accordingly dismissed.

Plaintiffs also claim that New York's requirement that custody be transferred prior to the receipt of needed special services violates plaintiffs' rights as handicapped children under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder. Section 504 provides in part: "No otherwise qualified handicapped individual .. shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."[6] The regulations promulgated under the Act further provide that:

> In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap:
>
> \* \* \* \* \* \*
>
> (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered nonhandicapped persons;
>
> \* \* \* \* \* \*
>
> (4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons....

45 C.F.R. § 84.52(a) (1980). Plaintiffs' claim of discrimination on the basis of their handicap is that among all those eligible to receive any of the various forms of partially federally funded state assistance, only plaintiffs are required to submit to state custody as a prerequisite of receipt of needed benefits. Plaintiffs also assert that within the class of handicapped persons, plaintiffs comprise a disadvantaged subclass that alone is subject to the custody transfer requirement prior to the receipt of special services. Plaintiffs argue that the pre-condition imposed only on them as a result of their need for treatment in residential facilities limits their access to need-

ed benefits and discourages their use of needed benefits in direct violation of § 504 and 45 C.F.R. § 84.52(a) (1980), *supra.*

It is not disputed that the New York statutory scheme treats plaintiffs differently from other classes of beneficiaries and that the distinction is a result of plaintiffs' need for residential treatment. Moreover, as mentioned above, defendants do not contest plaintiffs' assertion that the pre-condition of custody transfer does in fact discourage and deter plaintiffs' parents from placing their children in residential care centers. Although unlawful discrimination does not arise whenever a state either treats the handicapped differently from the non-handicapped or differentiates among classes of the handicapped, the state must "make at least some substantial showing in court that its plan is justified," *New York Ass'n for Retarded Children v. Carey,* 612 F.2d 644, 650 (2d Cir. 1979), or that there is "substantial justification" for the distinctions it draws. *Kampmeier v. Nyquist,* 553 F.2d 296, 299 (2d Cir. 1977); *see Sherry v. New York State Educ. Dep't,* 479 F.Supp. 1328, 1338–39 (W.D.N.Y.1979) ("substantial justification" found lacking for decision by New York State School for the Blind to suspend emotionally disturbed child despite the fact that there was not enough staff to protect the child from self-abuse). In the instant case, defendants have offered virtually no justification for the requirement that plaintiffs' parents relinquish custody prior to admission of their children to residential treatment centers. The principal explanation suggested by defendants is that the transfer of custody requirement insures that placement in a residential facility will be in the best interests of the child since custody will not be transferred without a judicial determination that the placement and the custody transfer would be in the best interests of the child. The illogic of the argument, of course, lies in its unsupported and unsup-

---

**6.** The applicability of the Rehabilitation Act of 1973 to plaintiffs' claims against defendants is not contested: defendants' assistance programs, as mentioned above, are supported in part by federal funding and plaintiffs are indisputably handicapped within the meaning of the Act, 29 U.S.C. § 706(7).

portable premise that it is the transfer of custody, not the judicial determination, that insures that the placement will be in the child's best interests. Defendants' explanation in no way justifies the custody transfer requirement since the judicial proceeding functions independently of the transfer of custody and provides all the safeguards that defendants fallaciously argue exist only by virtue of the custody transfer requirement. The second, equally unconvincing, explanation offered by defendants is that under 42 U.S.C. § 608(a)[7] the transfer of custody requirement is a pre-condition of receipt by the state of federal funding in connection with the residential treatment program. The contention is without merit for the simple reason that 42 U.S.C. § 608(a) does not require that the state obtain custody of a child prior to the receipt of federal aid for the residential treatment of that child.

▪ While the court could conceive of reasons that might justify the transfer of custody requirement,[8] defendants have not in their affidavits and briefs established or even argued that any valid reasons exist. Since the standard set forth in this Circuit is that the state must substantially justify its differential treatment of handicapped plaintiffs, the court shall not deferentially posit rationales that may not in fact exist. Accordingly, the court rules that the requirement that custody be transferred prior to the admission of the handicapped children comprising the plaintiff class to residential treatment centers violates § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The court cautions that it does not find unlawful any other portion of the New York statutory scheme; to the contrary, the court's ruling is premised on the independent functioning of the rest of the statutory process by which children are placed in authorized residential treatment centers.

## II.

The court now turns to plaintiffs' claim that § 358-a violates their substantive due process rights under the Fourteenth Amendment to the Constitution of the United States by conditioning the receipt of necessary benefits on the sacrifice of fundamental constitutional rights.[9] While fixed legal guidelines in the amorphous area of fundamental rights have remained elusive, certain basic principles may be identified.

▪ First, there is no doubt that the right to family privacy and integrity is "fundamental" and that the right of the parent to rear and retain custody of his children is one aspect of that fundamental right. *Zablocki v. Redhail*, 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978); *Smith v. Organization of Foster Families*, 431 U.S. 816, 844–45, 97 S.Ct. 2094, 2109–10, 53 L.Ed.2d 14 (1977); *Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972); *Ginsberg v. New York*, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390,

---

**7.** 42 U.S.C. § 608(a), in relevant part, defines the term "dependent child" to include a child removed from his home "pursuant to a voluntary placement agreement entered into by the child's parent or legal guardian, or as a result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child, [and] whose placement and care are the responsibility of ... the State...."

**8.** *E.g.*, the need, if any, of social services officials to make speedy decisions regarding the type or location of treatment without the obligation to consult beforehand with parents who may be difficult to locate or who may be unable to comprehend the nature of the treatment or who may have emotional or physical problems of their own such that placement of their children in residential homes was required in the first place.

**9.** Although the court's resolution of plaintiffs' statutory claim obviates the need to consider the constitutional issue as well, since "the precise level of scrutiny that may be appropriate for the variety of contexts in which claims under Section 504 [of the Rehabilitation Act of 1973] will arise" has not been determined, *New York Ass'n for Retarded Children v. Carey*, 612 F.2d 644, 650 (2d Cir. 1979), the court provides the following alternate holding.

399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Second, it is well-settled that a state may neither directly limit the exercise of a fundamental right nor condition the receipt of benefits in such a way that the exercise of fundamental rights is penalized unless it has a "compelling" interest in so doing. *See, e.g., Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Third, the state has no constitutional obligation to provide plaintiffs with any benefits, *see Black v. Beame,* 550 F.2d 815, 817 (2d Cir. 1977), and the Supreme Court has specifically refused to scrutinize strictly state allocations of welfare benefits challenged due to their effect on family integrity, requiring instead only a rational basis. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *see San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 33, 93 S.Ct. 1278, 1296, 36 L.Ed.2d 16 (1973); *Black v. Beame, supra,* 550 F.2d at 817.

Classification of such constitutional claims is often decisive of their outcome. In the instant case, the court must determine whether to apply the rational basis test applicable to social benefits cases, the compelling interest test applicable to certain fundamental rights cases, or an intermediate standard appropriate to the particular case.

■■■ Defendants contend that *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), and its progeny provide the standard applicable to this case. In *Dandridge,* the Supreme Court applied the rational basis test to an equal protection challenge to a Maryland statute which placed a ceiling on the AFDC grant available to a single family irrespective of the number of persons in the family. The plaintiffs in *Dandridge* claimed that the statute destroyed family integrity by en-

couraging families to send children away to relatives not receiving the maximum grant. The Court rejected the plaintiffs' claim, stating that "the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this court." *Id.* at 487, 90 S.Ct. at 1162. In *Black v. Beame,* 550 F.2d 815 (2d Cir. 1977), the Second Circuit followed *Dandridge* and applied the rational basis test to a claim by nine brothers and sisters that the state violated their right to family integrity by misallocating welfare resources and by failing to provide housing and services sufficient to keep the family together. The Second Circuit apparently accepted plaintiffs' argument that "once the state decides to offer public assistance to the poor, it is constitutionally required to do so in a manner that is not unnecessarily destructive of family unity," *id.* at 816, but nevertheless found that the challenged action had the requisite rational basis.

This court finds the *Dandridge* line of cases distinguishable from the instant case. Whereas the plaintiffs in *Dandridge* and its progeny challenged the allocation of social benefits, plaintiffs in this case are challenging a condition imposed upon the receipt of benefits and not the allocation of those benefits.[10] At the core of the holding in *Dandridge* was the Court's refusal "to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." 397 U.S. at 487, 90 S.Ct. at 1162; *see Califano v. Boles,* 443 U.S. 282, 296, 99 S.Ct. 2767, 2775, 61 L.Ed.2d 541 (1977); *Jimenez v. Weinberger,* 417 U.S. 628, 633, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974). Plaintiffs' claim in this case does not challenge the relative allocation of public welfare funds and does not require the court to substitute its judgment for that of the state legislature as to which class of potential beneficiaries should receive more or less. The condition imposed

---

10. The court cautions that it does not find the instant case distinguishable because the rights involved in the *Dandridge* line of cases are less

fundamental or because the impact on the exercise of fundamental rights in those cases was less direct or substantial.

upon plaintiffs prior to their admission to residential treatment centers affects their exercise of a fundamental right and is not the product of a legislative decision to allocate less funding to those in need of residential services and more to those with other needs. The court therefore declines to extend to this case the rational basis test applied in the *Dandridge* line of cases.

The court now considers the applicability of the compelling interest test. Recognition that the right to family integrity is fundamental and that exercise of the right is limited to some extent by the statute in question does not resolve the issue. Fundamental rights are not absolute; where governmental action infringes a fundamental right the infringement may be justified by a compelling state interest, and where infringement is not substantial a compelling state interest will not even be required. As the Supreme Court stated in *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 256–57, 94 S.Ct. 1076, 1081–82, 39 L.Ed.2d 306 (1974): "[a]lthough any durational residence requirement impinges to some extent on the right to travel, the Court in *Shapiro* [*v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)] did not declare such a requirement to be *per se* unconstitutional.... The amount of impact required to give rise to the compelling-state-interest test was not made clear." *See also Black v. Beame*, 419 F.Supp. 599, 604 n.3 (S.D.N.Y.1976), *aff'd*, 550 F.2d 815 (2d Cir. 1977) ("The substantive issue presented to the Court is not whether the interest [in family integrity] exists, but whether it requires the type of protection plaintiffs claim is constitutionally mandated."). Thus, to select the appropriate standard the court must assess the impact of the challenged statute on plaintiffs' exercise of their constitutional right. For the following reasons, the court finds the infringement on plaintiffs' right to be significant but not so substantial as to require a compelling state interest. First, for those members of the plaintiff class who choose to enter the residential facilities, the transfer of custody requirement is certainly harsh but the harshness is mitigated by the fact that plaintiffs' parents have voluntarily chosen to relinquish their children to the full-time care of the state for a period of time in excess of thirty days. Second, for those who choose not to submit to the statutory condition, the denial of benefits is limited to the non-provision of residential treatment at state expense, and is less onerous than a general denial of all welfare benefits. *See Harris v. McRae*, 448 U.S. 297, 317 n.19, 100 S.Ct. 2671, 2688 n.19, 65 L.Ed.2d 784 (1980); *cf. Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (state could not condition receipt of *all* AFDC benefits on residency of one year); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (state could not withhold *all* unemployment compensation benefits from an otherwise eligible claimant due to her exercise of her religious beliefs). A compelling state interest is therefore not required to justify the transfer of custody requirement.

Having found that the impact of the challenged statute on plaintiffs' exercise of their constitutional right is significant but that neither the rational basis nor compelling state interest tests is applicable, the court shall apply an alternative, intermediate standard or balancing test. As the Ninth Circuit has stated:

> The rather formal three-tier analysis of the Court's recent equal protection decisions differs somewhat from its less categorical approach when questions of substantive due process are involved. Recent decisions indicate that substantive due process scrutiny of a government regulation involves a case-by-case balancing of the nature of the individual interest allegedly infringed, the importance of the government interests furthered, the degree of infringement, and the sensitivity of the government entity responsible for the regulation to more carefully tailored alternative goals.

*Beller v. Middendorf*, 632 F.2d 788, 807 (9th Cir. 1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *see Zablocki v. Redhail*, 434 U.S. 374, 386, 98 S.Ct.

673, 681, 54 L.Ed.2d 618 (1978); *Moore v. City of E. Cleveland*, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977). Under this standard, since it has been established that the transfer of custody requirement infringes plaintiffs' exercise of their fundamental right to family integrity, defendants must show that the requirement serves important state purposes. To state the standard is to arrive at the conclusion. As discussed above with regard to plaintiffs' statutory claim, defendants have offered no substantial justification for the transfer of custody requirement. Since the statutory requirement that plaintiffs' parents relinquish custody of their children to the state prior to admission of the children to residential care facilities infringes plaintiffs' fundamental right to family integrity, and since the requirement serves no important state interest, the court finds that the requirement violates plaintiffs' substantive due process rights.

Plaintiffs' motion for partial summary judgment is granted. Defendants' cross-motion is denied.

So Ordered.