*809 OPINION OF THE COURT
Claire T. Pearce, J.
The instant proceeding was brought by the petitioner, a child care agency, pursuant to section 384-b (subd 4, par [b]) of the Social Services Law to terminate the parental rights of Debra B., also known as Debra W. and against Charles W. pursuant to section 384-b (subd 4, par [d]) of the Social Services Law on the grounds of abandonment and permanent neglect and to transfer custody and guardianship of the subject child, Jamal, to petitioner and the Commissioner of Social Services with the right of either agency to place Jamal for legal adoption without further notice to or consent of respondents.
As required by article 6 of the Family Court Act, a hearing, by way of an inquest, was conducted by this court on December 22, 1982. The relevant facts adduced at said inquest may be briefly summarized. Jamal has been in the foster care system since June, 1977, when he was diagnosed as profoundly retarded with autism and originally placed in a child care institution located outside of New York State. He was returned to New York and placed in the care of petitioner in January, 1980. There has been'no reported contact between Jamal and his alleged father since 1971. In regard to Debra B., it appears that she cared for Jamal during his early childhood but always in the home of her mother Dorothy B. The maternal grandmother is described in the petitioner’s files as having been Jamal’s “primary caretaker”.
It has been clearly established that following Jamal’s placement Debra B. has continuously failed to visit him in the institutions where he has been placed, although she may have seen him in her mother’s home, and it is likewise clear that she has failed to remain in contact and keep the petitioner apprised of her address. Attempts of petitioner to discover her whereabouts (being principally confined over the years to occasional inquiries made to Dorothy B., who has always demurred), have proved unsuccessful.
Nevertheless, the court finds that Jamal B. is not a permanently neglected child as defined by section 384-b of the Social Services Law for the reasons to be discussed more fully below and dismisses this petition with a strong *810 recommendation that petitioner’s determination to provide planning for adoption in this case be resubmitted to the Department of Social Services for re-evaluation and for consideration of a modification of the placement agreement in conformance with policy and procedures promulgated by that department on January 3, 1983 in response to a determination by the United States District Court, Southern District, declaring the transfer of custody for persons belonging to a class designated as handicapped children requiring placement in residential treatment centers to be violative of section 504 of the Rehabilitation Act of 1973 (US Code, tit 29, § 794) and of the substantive due process rights of class members and their parents. (Joyner v Dumpson, 533 F Supp 233 [US Dist Ct, SONY, 1982].)
The court bases its determination firstly upon the strong evidence in the record of Jamal’s relationship to Dorothy B. In addition to having had primary responsibility for his care prior to placement, Dorothy B. has exhibited a continuing and abiding concern for his health and welfare; she has been in close contact with the petitioner and has shown interest in his educational, medical and emotional needs. She has been looked to by the petitioner as the primary familial resource for Jamal, and has continued to take him to her home for weekend visits on a regular basis up to the present time. She has done all that could be reasonably required to be done by a parent of a profoundly handicapped child.
The respondent from all accounts in this record acquiesced in her mother’s exercise of authority in placing Jamal, signing releases for his medical treatment while in placement and generally exercising her own judgment as to the concerns of Jamal’s care and best interest. In the opinion of this court, these actions have placed Dorothy B. in loco parentis to Jamal. “ Tn loco parentis’ refers to a person who has put himself completely in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges these obligations. The assumption of the parental relationship is largely a question of intention * * * which may be shown by the acts and declarations of the person alleged to stand in that relation.” (15 NY Jur [rev vol], Domestic Relations Law, § 336, p 568.)
*811 Whether the status of in loco parentis exists is a question of fact to be determined from a full review of the facts and circumstances in the instant case. Among the facts which the courts have considered on the issue have been: (1) whether the party intends to assume all the obligations of parenthood (.People v Lilly, 71 AD2d 393); (2) the level of involvement in the child’s home, school, recreation and social activities (Pierce v Helz, 64 Misc 2d 131); (3) whether or not the party is receiving compensation for his or her services such as in a foster care arrangement (Miller v Davis, 49 Misc 2d 764); (4) whether the party means to take the place of the lawful parent not only in providing support but also with respect to educating, instructing and caring for the general welfare of the" child (Rutkowski v Wasko, 286 App Div 327); and (5) whether the party has a true interest in the well-being and general welfare of the child (Rutkowski v Wasko, supra).
The petitioner’s case file amply supports a finding of Dorothy B.’s sincere interests and her actions as parent in regard to Jamal. Therefore, by virtue of her position as the real party in interest, Dorothy B. was entitled to notice and an opportunity to be heard in these proceedings. (Rivera v Marcus, 696 F2d 1016.)
In the Rivera case (supra), the Second Circuit held that both the custodial relative and child possess an important liberty interest in preserving the integrity and stability of their family, and presents a strong analysis for the proposition that “[o]urs is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition.” (Moore v East Cleveland, 431 US 494, 504-505, cited in Rivera v Marcus, supra, at p 1021:) Moreover the signing of a foster care agreement by the custodian does not vitiate that right. (Rivera v Marcus, supra, at pp 1026, 1029.)
Secondly, the petitioner has failed to substantiate its claim that Jamal is no longer in need of foster care in a residential treatment center and is therefore an apprqpriate candidate for adoption requiring the severance of par *812 ental ties. Section 384-b (subd 1, par [a], cl [iv]) of the Social Services Law provides that only “when it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought for the child” (emphasis supplied).
The testimony of agency caseworkers was to the effect that Jamal is currently in need of residential treatment and that he will in all likelihood continue to require such treatment for years into the foreseeable future. Moreover, testimony was adduced which indicated that the determination to proceed from a plan for continued custodial care to adoption was based not upon an assessment of Jamal’s needs but upon perceptions of the caseworkers as to the agency’s administrative and legal imperatives.
In the view of the court, the petitioner has failed to establish the threshold issue of Jamal’s ability to function in a “normal family home” outside of an institutional setting (Social Services Law, § 384-b, subd 1, par [a], cl [iv]). The purpose and intent of the Legislature in enacting section 384-b was to provide a mechanism by which a child may be freed for adoption when continued existence in the natural home or in a foster care facility is no longer in child’s best interests. (See Carrieri, Practice Commentary, McKinney’s Cons Laws of NY, Book 52A, Social Services Law, § 384-b, p 127.) It provides a statutory scheme which should be implemented only under the most stringent of circumstances. (Matter of Peter John “DD”, 48 AD2d 956.) The motivating thrust of the statute as outlined in the Commentaries (op. cit.), is to insure that a child in foster care is in the environment which offers the best opportunity for him/her to develop and thrive.
Jamal is receiving an intensive treatment regimen with 24-hour supervision and care, professionally integrated medical, social work and rehabilitative services which have been developed to meet his particular and very extensive needs. It does not appear that he can function in an ordinary or “normal” family home or that his family is able to provide him with the extraordinary care he needs and deserves. Where, as in the case at bar, continuing foster *813 care is needed in order to provide essential treatment and services, termination of parental rights and adoption are not a proper recourse in accordance with the statutory scheme and purpose.
Finally, the United States District Court, Southern District, in reviewing transfer of custody where, as here, the basis of placement was the need for residential treatment, has held that such transfer is violative of the United States Constitution. (Joyner v Dumpson, supra.)
The petition in Joyner (supra) was brought as a class action, the members of said class comprised of children whose parents could not afford the cost of necessary special services outside their homes. They sought a declaratory judgment that the statutory scheme provided in section 358-a of the Social Services Law as applied violated their rights under the First, Ninth and Fourteenth Amendments, title IV of the Social Security Act (US Code, tit 42, § 601 et seq.) and section 504 of the Rehabilitation Act of 1973 (US Code, tit 29, § 794).
The court, applying an intermediate level of constitutional scrutiny, found that the requirement did not serve any asserted important State interest, and held that the transfer of custody required by section 358-a of the Social Services Law, as a condition precedent to the placement of a child in a residential treatment facility, infringed upon a parent and child’s fundamental right to family integrity, and violated plaintiffs’ substantive due process rights. Following the court’s determination the Department of Social Services, in order to comply with the court’s ruling, adopted new placement procedures. (See Dept of Social Servs mem No. 1/82, eff Jan. 3, 1983; Supplement: SSC Procedure Nos. 21, 21 A; Field Office Procedure Manual Voluntary Placements for Handicapped Children, § 4.)
Based on Jamal’s membership in the class designated in Joyner v Dumpson (supra), and Department of Social Services modification of requirements and procedures for transfer of custody for said class members which are made retroactive in their effect, it is not established that Jamal is rightfully in the “custody” of the Commissioner of Social Services. Consequently, an action for termination of paren *814 tal or guardian rights in this matter is at the very least premature.