[609 NYS2d 324]

In the Matter of GERALDINE ROSE W., a Child Alleged to be Neglected and/or Abandoned. CATHOLIC CHILD CARE SOCIETY OF THE DIOCESE OF BROOKLYN, ST. JOSEPH SERVICES FOR CHILDREN AND FAMILIES, Respondent; VANESSA W., Appellant.

Second Department, March 28, 1994

APPEARANCES OF COUNSEL

*Lawrence A. Salvato,* New York City, for appellant.

*Helen McTaggart,* Brooklyn, for respondent.

*Lenore Gittis,* New York City *(Karen Morth* and *Robin Karasyk* of counsel), *Law Guardian,* for infant.

### OPINION OF THE COURT

ROSENBLATT, J. P.

The appeal before us raises certain procedural and appellate aspects of cases involving termination of parental rights, and the manner in which the applicable statutes relate to the process by which a child is freed for adoption.

In the Family Court the petitioner, the Catholic Child Care Society of the Diocese of Brooklyn, St. Joseph Services for Children and Families (hereinafter the Catholic Child Care Society), alleging permanent neglect against the appellant mother and abandonment against the father, sought termination of parental rights *(see,* Social Services Law § 384-b) so that the child, Geraldine, could be freed for adoption. The child's father did not appear;[1] the appellant appeared and was assigned counsel. After some preliminary proceedings, and in the appellant's presence, the court set the case down for trial on November 8, 1991. On the given date the appellant's attorney, the Law Guardian, and the caseworker were present. The appellant was not. There is no indication that the appellant contacted the court, the agency, the caseworker, her attorney, or anyone else, then or at any other time, concerning her failure to attend the trial.[2] Her attorney, however, was circumspect in stating that while she could offer the court no reason for her client's absence, she would remain present

---

1. He has never appeared and is not a party to this appeal.

2. We note that both the summons and supplemental summons with which the appellant was served contain a warning that the failure to appear may result in an order freeing the child for adoption (Social Services Law § 384-b [3] [e]).

during the proceedings, but would not participate, as the court went forward with an inquest.

The court heard proof by the caseworker as to the child's birth in 1986 with a positive toxicology, of her placement with a preadoptive foster mother with whom she has lived for virtually her entire life, and of the appellant's history of neglecting the child. In this respect, the evidence showed that despite diligent efforts by the agency, the appellant failed to attend resource programs and failed to appear for most of her scheduled visits with the child, never calling to cancel or reschedule the missed visits. Based upon wholly adequate proof, the court made a finding of abandonment and permanent neglect.

As authorized by Family Court Act § 625 (a), and at the Law Guardian's request, the court then proceeded immediately to conduct a dispositional hearing. It heard testimony as to the foster mother's wish to adopt Geraldine, and testimony that Geraldine said of her foster mother "This is my mommy, I want to stay with her".

The court then issued the order appealed from, by which it terminated the appellant's parental rights and freed Geraldine for adoption under the aegis of the Catholic Child Care Society and the Commissioner of Social Services of the City of New York. The appellant never moved to vacate her default. Her attorney filed a notice of appeal dated December 27, 1991.

The Catholic Child Care Society and the Law Guardian, invoking CPLR 5015 (a) (1) and 5511, contend that the appeal should be dismissed because no appeal lies from a default judgment, and that review is possible only upon an appeal from the denial of a motion to vacate a default. Accordingly, they seek to uphold the termination order and go forward with the adoption. The appellant argues, in essence, that termination of parental rights is a species of law not inherently amenable to default judgments, that the Family Court did not proceed by way of default, and that Social Services Law § 384-b does not authorize entry of judgment upon default.

The procedures governing termination of parental rights, and the placement of children in adoptive homes, are matters of the highest importance. Because these two proceedings are closely linked (see, Matter of Dale P., 189 AD2d 325, 332, lv granted 82 NY2d 661), the Legislature has enacted a scheme for their coalescence, and a statutory environment that allows

for as much predictability and certainty as possible. In interpreting the pertinent statutes, we find it appropriate to express the rationale behind them, and to detail why the position taken by the Law Guardian and the Catholic Child Care Society is correct.

To begin with, we disagree with the appellant's contention that her failure to appear amounted to something less than a default. The record reveals, and the order plainly recites, that the court proceeded by inquest. The courts have recognized that proceeding by inquest upon default in termination cases is a necessary and orderly means of bringing matters to conclusion, with appropriate procedures available to open a default when a reasonable excuse for the default is coupled with the proffer of a meritorious defense *(see, Matter of "Male" Jones,* 128 AD2d 403; *Matter of Nathalie A.,* 145 AD2d 629; *Matter of Shirley C.,* 145 AD2d 631; *Matter of Raymond Anthony A.,* 192 AD2d 529).

Contrary to the position advanced by the appellant, the Family Court in termination cases has often taken inquests upon a default *(see, e.g., Matter of Ana Maria R.,* 98 Misc 2d 910; *Matter of Jamal B.,* 119 Misc 2d 808; *Matter of Charise B.,* 146 Misc 2d 943; *Matter of Alexandra C.,* 157 Misc 2d 262). Moreover, the Appellate Divisions have weighed the merits of parents' motions to vacate defaults on appeals from orders determining such motions. In *Matter of Patrick L. McC.* (179 AD2d 220), the grounds were held adequate, but in other cases they were not, either because the grounds offered were conclusory *(see, Matter of Shirley C., supra; Matter of "Male" Jones, supra; Matter of Raymond Anthony A., supra),* specious *(see, Matter of Antoine C.,* 176 AD2d 524), incredible *(see, Matter of Male H.,* 179 AD2d 384), or because the parent offered no facts *(see, Matter of Nathalie A., supra),* or insufficient facts to support a meritorious defense *(see, Matter of Linday E.,* 177 AD2d 276; *see also, Matter of Celeste M.,* 180 AD2d 437; *Matter of Luis R.,* 184 AD2d 1012).

Considering this lengthy body of precedent and practice, we cannot accept the argument that the concept of inquest upon default is alien to parental termination cases, at least in practice.

As to the argument that it *should* be alien, and that it is not authorized by statute, we disagree as well. Although Social Services Law § 384-b does not explicitly state that proceedings are governed by the default mechanism of CPLR

5015 and 5511, the sensibilities of the statutory scheme and the ancillary provisions demand as much. Clearly, the proceedings contemplate defaults. It could not be otherwise, else a court would be powerless to conclude the proceedings. Termination proceedings would be rendered interminable, and the adoption goal could be thwarted indefinitely by simple nonappearance. The statute therefore relaxes the burden of proof on the petitioning agency with an evidentiary rule by which a parent who *"defaults"* in a termination case is presumed to have had the financial and physical ability to have cared for the child *(see,* Social Services Law § 384-b [7] [a]).

Secondly, it is inconceivable that the Legislature did not contemplate judgment by default, considering that by its very nature the termination procedure is aimed at parents who have abandoned or permanently neglected their children, and who, in an appreciable number of cases, do not appear. For that reason, even the process of service by publication has been employed in termination cases *(see, e.g., Matter of Star Leslie W.,* 63 NY2d 136, 142; *Matter of Clarisse S.,* 128 Misc 2d 866; *Matter of Dana Marie E.,* 128 Misc 2d 1018, 1019), and is another clear indication of the authority of the court to proceed to inquest upon a default.

Because the default/inquest device is a procedural imperative, it is equally important that it not be invoked arbitrarily or irrevocably. The importation of CPLR 5015 and 5511 as the appropriate procedure is not only legally correct, but eminently sensible. Family Court Act § 165 (a), by which CPLR procedures govern when applicable, supports its use. Moreover, a defaulting party is given the chance to have the order vacated upon the familiar CPLR 5015 standards, and an order denying such an application is then subject to appellate review. If a defaulting party were not obligated to move to reopen the default, the Family Court, and the reviewing court, would have no basis to weigh the excuse and potential defense. Finality and order would be replaced by procedural disorder and the disruption of permanency planning, introducing chaos into the lives of children who can least afford it. These considerations more than justify the previously unexpressed rationale for the rule by which a defaulting parent will have no appeal in the absence of a motion to vacate his or her default *(see, Matter of Zagary George Bayne G.,* 185 AD2d 320, 322). In this respect, the applicability of CPLR 5015 is no different than in other domestic relations cases, such as actions for divorce judgments *(see, Imor v Imor,* 114 AD2d 552),

and custody proceedings *(see, Matter of Brown v Brown,* 190 AD2d 668).

In contending that we should reject the application of CPLR 5511 in termination cases, the appellant cites this Court's decision in *Matter of Angel R.* (187 AD2d 433) and the First Department case of *Matter of Theodore Luther S.* (176 AD2d 544). Those cases do not, however, support the proposition that a defaulting parent has a right to appeal from the default, or the proposition that an appeal taken by a defaulting parent is not dismissible as a violation of CPLR 5511. The decision in *Theodore Luther S.* is silent as to whether a motion to vacate the default was ever made. The *Angel R.* case is distinguishable on the ground that the case was litigated and was conducted by the parent's attorney, in the parent's absence. Unlike the case before us, in which the attorney expressly declined to participate, the order in *Angel R.* was not denominated in our decision and order as one entered upon a default, nor was the trial denominated an inquest. In any event, *Angel R.* should not be read to authorize an appeal from a default judgment, and we so hold.

In this light, *Angel R.* is akin to *Matter of Cecelia A.* (199 AD2d 582), in which the Third Department concluded that there was no "default" by the nonappearing parents whose attorney represented them at a contested proceeding. Indeed, the Third Department, in finding no "default," reiterated the well-settled general rule that a party may not appeal from an order entered upon a default. It acted upon the rule by dismissing the appeal in *Matter of Ashley X.* (200 AD2d 911) the very next month after it decided *Cecelia A.* The default/vacatur rationale, however, does not apply unless there is a genuine default *(see, Matter of Robert F.,* 200 AD2d 899, in which the Court held that the parent's failure to appear on the last day of a contested termination hearing, at which the parent was represented by counsel throughout, does not constitute a default within the meaning of CPLR 5511; *see also, Matter of Kendra M.,* 175 AD2d 657 [parent is known to be incarcerated at the time of the hearing]; *Matter of Abdul Kaheem Unique Mohammed Jewel Cameron C.,* 200 AD2d 356 [accord]).

Lastly, we do not regard the actions of the appellant's trial counsel as evincing any lack of competence. On the contrary, her stance was tactical and ostensibly taken out of her recog-

nition that if she participated in the appellant's absence, the appellant would be severely handicapped *(see,* Carrieri, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 52A, Social Services Law § 384-b, 1994 Pocket Part, at 39). Rather than unilaterally sacrificing her client's chances to seek to open a default—if and when the grounds ever existed to do so—she preserved that potential opportunity, and we cannot now presume or speculate that any such proper grounds ever existed.

Accordingly, the appeal is dismissed, without costs or disbursements.

LAWRENCE, ALTMAN and GOLDSTEIN, JJ., concur.

Ordered that the appeal is dismissed, without costs or disbursements.