UNITED STATES of America, Appellee,

v.

Richard COLUCCIO, Defendant,

Theresa Coluccio, Claimant–Appellant.

No. 771, Docket 94–6062.

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 1994.

Decided March 24, 1995.

Theresa Coluccio, claimant-appellant pro se.

Elliot M. Schachner, Asst. U.S. Atty., Brooklyn (Zachary W. Carter, U.S. Atty. for the E.D.N.Y., Brooklyn, NY, Varuni Nelson, Asst. U.S. Atty., Brooklyn, NY, of counsel), for appellee.

Before: CARDAMONE, PIERCE, and MINER, Circuit Judges.

PIERCE, Circuit Judge:

Theresa Coluccio ("Ms. Coluccio"), claimant, appeals from a February 2, 1994 order, 842 F.Supp. 663, of the United States District Court for the Eastern District of New

York (I. Leo Glasser, *Judge*), which denied Ms. Coluccio's application for return of $2,500 securing a cost bond posted by Richard Coluccio ("Mr. Coluccio"), her son, in order that he might contest the seizure of his aircraft. This civil action stems from criminal proceedings brought against Mr. Coluccio. The United States (the "Government") sought to seize the funds securing the cost bond in order to partially satisfy a criminal fine imposed on Mr. Coluccio as part of a sentence and, thus, made application to execute upon the bond pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3001 *et seq.* Ms. Coluccio contests the seizure of the cost bond on the ground that she provided Mr. Coluccio with the $2,500; she, thus, made application in the district court to have the $2,500 returned to her. Although the district court found that Ms. Coluccio did own the $2,500 prior to the posting of the bond, 842 F.Supp. at 666, the court nevertheless held that the cost bond was subject to forfeiture since "[t]he $2,500 ... is property in which [Mr. Coluccio] has a 'substantial ... interest'...." *Id.* at 667. The central issues on appeal are: (1) whether the fine owed by Mr. Coluccio is a "debt" within the meaning of § 3002(3)(B) of the FDCPA, thereby making it subject to forfeiture; (2) whether Ms. Coluccio has standing; and (3) whether Mr. Coluccio has a "substantial interest" in the bond, thereby making the bond subject to seizure pursuant to the FDCPA. For the reasons set forth below, we vacate and remand.

## BACKGROUND

On March 3, 1987, Mr. Coluccio pleaded guilty to a charge of knowingly and intentionally possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court (Bramwell, *J.*) sentenced him on April 16, 1987 to twelve years impris-

onment, a $150,000[1] fine and a special assessment of $50.[2]

On September 29, 1986, the Drug Enforcement Agency ("DEA") seized a 1969 Piper Aztec airplane (the "airplane") owned by Mr. Coluccio and commenced an administrative forfeiture proceeding against the airplane pursuant to 21 U.S.C. § 881. Mr. Coluccio was given notice of this forfeiture proceeding on December 31, 1986, and he was informed at that time that he would have to post a $2,500 cost bond in order to contest the forfeiture, pursuant to 19 U.S.C. § 1608. Mr. Coluccio posted the bond and submitted a letter contesting the forfeiture. In March 1991, the Government commenced a civil action for forfeiture of the airplane and Mr. Coluccio moved to dismiss the complaint. On March 23, 1992, the district court (Spatt, *J.*) dismissed the complaint, after finding that the Government failed to set forth sufficient evidence to show a nexus between the seized property and the illegal drug trafficking. The court granted the Government 30 days to amend the complaint; when the Government failed to do so, the court dismissed the action on May 6, 1992.

On April 15, 1992, the Government filed an Application for Writ of Execution pursuant to the FDCPA, 28 U.S.C. § 3203(c)(1) in order to sell the airplane and to apply the sale proceeds to partially satisfy Mr. Coluccio's criminal fine. By letter dated April 28, 1992, Mr. Coluccio objected to the Writ of Execution and requested that a hearing be held in the United States District Court for the Eastern District of Michigan, the district where Mr. Coluccio was incarcerated. The district court (Sifton, *J.*) transferred the case to Michigan solely for the purpose of conducting a hearing with regard to the airplane. The district court sitting in Michigan (Zatkoff, *J.*) granted the writ of execution on the airplane and that decision was affirmed.

---

**1.** Mr. Coluccio moved, *inter alia*, to have his fine reduced pursuant to Fed.R.Crim.P. 35, on March 26, 1993. The district court (Glasser, *J.*) reduced the principal amount of the fine to $125,000. This Court affirmed. *United States v. Coluccio,* 9 F.3d 1536 (2d Cir.1993).

**2.** In addition, Mr. Coluccio pleaded guilty on January 6, 1987 in Suffolk County Court, to a

drug charge and weapons charge in violation of N.Y.Penal Law §§ 220.41 & 265.03, respectively. He was sentenced to eight years to life for the drug charge and four years to life for the weapons charge, and the sentences were ordered to run concurrently with those imposed by the district court.

*United States v. Coluccio,* 19 F.3d 1115 (6th Cir.1994).

On June 12, 1992, the Government filed a second Application for Writ of Execution— this time against the $2,500 which secured the cost bond. Mr. Coluccio was served with notice of the cost bond application but did not respond. Because Ms. Coluccio asserted an interest in the cost bond during a telephone conversation with the Assistant United States Attorney, she was mailed a copy of the writ as well. On June 16, 1992, Ms. Coluccio filed a request for a hearing with the Clerk of the Eastern District.

The district court held a hearing on this matter on September 24, 1993. At the hearing, Ms. Coluccio testified that she withdrew a total of $2,500 from three separate accounts, which she held at the Greater New York Savings Bank, and supplied the money to her son to post the bond. She further testified that there was an implicit understanding that she would get the money back when the forfeiture hearing ended.

In an order dated February 2, 1994, the district court denied Ms. Coluccio's request to have the funds securing the cost bond returned. Although the district court found that Ms. Coluccio did provide the $2,500 for the cost bond, the court nevertheless held that because Mr. Coluccio benefitted from the bond, he had a "substantial interest" in it and, therefore, the bond was subject to execution pursuant to the FDCPA. This appeal followed.

### DISCUSSION

■ On appeal, Ms. Coluccio first contends that the criminal fine imposed on Mr. Coluccio is not a "debt" within the meaning of § 3002(3)(B) of the FDCPA and, therefore, the FDCPA cannot be used to seize the funds securing the cost bond as partial satisfaction of the fine. This contention is without merit.

The FDCPA "provides the exclusive civil procedure[ ] for the United States to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1). The Act applies to judgments "entered in favor of the United States ... arising from a civil or *criminal proceeding*

regarding a debt." *Id.* § 3002(8) (emphasis added). A "debt" is defined as, *inter alia,* "an amount that is owing to the United States on account of a ... fine." *Id.* § 3002(3)(B). Here, the Government applied for the Writ of Execution against the cost bond in order to partially satisfy a fine imposed on Mr. Coluccio in a criminal proceeding. Thus, the application clearly falls within the purview of the FDCPA. *See Coluccio,* 19 F.3d at 1117; *United States v. Gelb,* 783 F.Supp. 748, 752 (E.D.N.Y.1991).

■ Next, Ms. Coluccio argues that the Government cannot execute upon the bond pursuant to the FDCPA because she, and not Mr. Coluccio, is the rightful owner of the bond. In response, the Government first argues that Ms. Coluccio does not have standing to contest the forfeiture of the bond. Although acknowledging that the district court found that Ms. Coluccio owned the $2,500 used to post the bond, the Government argues that she lacks standing because the act of giving Mr. Coluccio the $2,500 to post the bond was either a gift or a loan. If Ms. Coluccio did indeed give or loan the money to Mr. Coluccio, then she would not have standing to contest the forfeiture of the cost bond. *United States v. Schwimmer,* 968 F.2d 1570, 1581 (2d Cir.1992) (general creditors do not have sufficient interest to contest forfeiture); *United States v. $280,505,* 655 F.Supp. 1487, 1495 (S.D.Fla.1986) (mother who gave son the money to purchase vehicle lacked standing to contest forfeiture of vehicle); *United States v. One 1971 Porsche Coupe Auto., Vehicle Identification No. 9111100355,* 364 F.Supp. 745, 748 (E.D.Pa. 1973) (since vehicle was gift from father to son, father did not have standing to contest forfeiture of vehicle); *see also United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1113 (5th Cir.1992) (to establish standing to contest a forfeiture, claimant must show some evidence of ownership). However, it is not clear that the act of providing the money in order that Mr. Coluccio could challenge the forfeiture of his airplane must be characterized as a gift or loan. Our recent decision in *Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154 (2d Cir.1994), is instructive in this regard. In *Torres,* the district court had

granted the Government summary judgment on the ground that claimant, Clara Torres, the wife of a convicted drug-dealer, lacked standing to contest the forfeiture of a $30,000 certificate of deposit ("CD") held in her husband's name. *Id.* at 1155. On appeal, we reversed the grant of summary judgment finding that Clara Torres had alleged sufficient facts to establish under New York law that she was the beneficiary of a constructive trust on the CD, and, thus, that she had standing. *Id.* at 1158–60.

■ We believe that Ms. Coluccio has similarly alleged sufficient facts which, if proven, would demonstrate that she is the beneficiary of a constructive trust as to the $2,500 which secured the cost bond. Generally, New York law requires that a person establish four elements before a court will impose a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment. *In re Koreag, Controle et Revision, S.A.,* 961 F.2d 341, 352 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992); *Bankers Sec. Life Ins. Soc'y v. Shakerdge,* 49 N.Y.2d 939, 428 N.Y.S.2d 623, 624, 406 N.E.2d 440, 440–41 (1980); *Simonds v. Simonds,* 45 N.Y.2d 233, 408 N.Y.S.2d 359, 363–64, 380 N.E.2d 189, 193–95 (1978). Although these elements are meant to "provide important guideposts, the constructive trust doctrine is equitable in nature and should not be 'rigidly limited.'" *In re Koreag,* 961 F.2d at 352 (quoting *Simonds,* 408 N.Y.S.2d at 363, 380 N.E.2d at 194), *accord Lines v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 743 F.Supp. 176, 180 (S.D.N.Y.1990) (the elements are not talismanic and courts have imposed a constructive trust in the absence of some of these elements).

We believe that Ms. Coluccio has made a prima facie showing that she is the beneficiary of a constructive trust over the cost bond and, therefore, has standing to contest the Government's execution of the bond. First, she has the necessary confidential relationship with her son. Second, although there was not an explicit "meeting of the minds" between Mr. and Ms. Coluccio, the record indicates that there may have been an unstated but mutual assumption that the money would be returned to her. Ms. Coluccio testified that "[she] knew [the $2,500] would be given back when, you know, when this was all finished." The close familial relationship between mother and son may, in this case, render their mutual assumption that the money would be returned an implicit agreement. *Cf. In re Koreag,* 961 F.2d at 353 (noting the necessity to apply the constructive trust elements "with sufficient flexibility to prevent unjust enrichment in a wide range of circumstances"). Third, if Ms. Coluccio provided the $2,500 for the cost bond with the expectation that the money would be returned, reliance may also exist. Finally, the Government's forfeiture would force a breach of Mr. Coluccio's implied promise that would result in unjust enrichment of the Government and commensurate unjust impoverishment of the claimant if Ms. Coluccio were denied standing. *See Torres,* 25 F.3d at 1159.

The Government argues that the lack of an explicit promise by Mr. Coluccio to repay makes the application of the constructive trust doctrine inappropriate. We disagree. "'[A] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" *Simonds,* 408 N.Y.S.2d at 363, 380 N.E.2d at 193 (quoting *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, *J.*)). As the New York Court of Appeals said in *Simonds,* "[a] constructive trust will be erected whenever necessary to satisfy the demands of justice...." *Id.* (citation and quotation marks omitted). The district court might find, upon remand, that there was a mutual understanding between mother and son that the money would be returned after the forfeiture hearing. In that event, we would have little difficulty concluding that justice demands that a constructive trust be erected to prevent the Government from retaining an interest in a cost bond for which Ms. Coluccio advanced funds with the implicit expectation that her money would be re-

turned. In sum, Ms. Coluccio alleges sufficient facts to confer standing to challenge the forfeiture of the bond.

■ The Government also argues that regardless of whether Ms. Coluccio owned the money used to post the bond, the writ of execution should still be granted because Mr. Coluccio has a substantial interest in the cost bond. The FDCPA permits the United States to levy upon "[a]ll property in which the judgment debtor has a substantial ... interest ... pursuant to a writ of execution." 28 U.S.C. § 3203(a). In determining if the Government can reach particular property through the FDCPA, our inquiry should focus on whether the judgment debtor maintains a substantial interest in that property. The Government contends that the district court correctly found that Mr. Coluccio, the judgment debtor, possessed a substantial interest in the bond and, thus, the bond was subject to FDCPA execution.

The district court found that Ms. Coluccio owned the $2,500 used to post the bond, but nevertheless reasoned that because Mr. Coluccio benefitted from the posting of the cost bond, he had a substantial interest in the bond. In so reasoning, the court relied on *Ray v. Jama Productions, Inc.*, 74 A.D.2d 845, 425 N.Y.S.2d 630, 631 (App.Div.2d Dept. 1980). In *Ray,* a judgment was entered in favor of plaintiff, Ray, against a theatrical performer, the judgment debtor. Thereafter, Ray served a "restraining notice" upon defendant, D–M Restaurant Corporation ("D–M Corp."), pursuant to N.Y.Civ.Prac.L. & R. § 5222, enjoining D–M Corp. from transferring any money that was due or became due to the judgment debtor "or any ... entity or other designee appointed by the said judgment debtor, or any other party or person having some relationship to the said judgment debtor." *Id.* (internal quotations omitted). Notwithstanding the restraining notice, D–M Corp. paid the sum of $10,000 to a theatrical company—pursuant to a contract formed prior to service of the restraining notice—in consideration for a two week performance by the judgment debtor at D–M Corp.'s restaurant. The question presented

was whether the judgment debtor had an interest in the money given directly to the theatrical company thereby subjecting the money to the restraints of the Rule 5222 notice. The court found that because the money given to the theatrical company "was to be utilized to satisfy [the judgment debtor's] debts and expenses," the debtor "derived the benefit[ ]" of that money and thus had an interest in the money sufficient to require D–M Corp. to adhere to the limitations of the restraining notice. *Id.*

Here, the district court found that Mr. Coluccio "clearly had an 'interest' in the $2,500 akin to that of the judgment debtor in the *Ray* case" because the son benefitted from Ms. Coluccio's posting of the bond. *Coluccio,* 842 F.Supp. at 667. Once so posted, Mr. Coluccio was able to challenge the forfeiture of the airplane. *Id.*

We find the district court's reliance on *Ray* misplaced. While concededly both the *Ray* judgment debtor and Mr. Coluccio gained "benefits" from the respective *res* in question, the nature of the respective benefits is not analogous. Indeed, in *Ray* the benefit was significantly more direct and tangible, since it satisfied the debtor's debts and expenses. In *Ray,* the judgment debtor attempted to claim no interest in money "merely because he [did] not acquire physical possession of such money." *Ray,* 425 N.Y.S.2d at 631. Because the $10,000 payment to the production company satisfying the judgment debtor's debts benefitted him as if he had received the money directly, it was reasonable for the *Ray* court to hold that he had an interest in that money. Here, Mr. Coluccio simply gained the beneficial use of the money for a brief period of time to contest the forfeiture of his airplane. It cannot be said, as in *Ray,* that because Mr. Coluccio was able to use his mother's $2,500 to post a cost bond in order to challenge the forfeiture of his airplane, that he gained a benefit similar to what it would have been if Ms. Coluccio had given him the $2,500 outright. *Ray* simply does not speak to the type of *de minimis* benefit Mr. Coluccio realized by the posting of the subject cost bond.[3]

More importantly, the district court failed to consider whether and to what extent Ms.

3. In arguing that Mr. Coluccio has a substantial

interest in the cost bond, the Government also

Coluccio's interest in the return of the funds securing the bond may necessarily diminish any interest Mr. Coluccio had in it. Indeed, if under New York law, Ms. Coluccio "owns" the funds securing the bond, then the execution upon the funds underlying the bond by the Government would be limited to the extent that her ownership interest would require. *See* 28 U.S.C. § 3010(a) ("The remedies available to the United States under [the FDCPA] may be enforced against property which is co-owned by a debtor and any other person only to the extent allowed by the law of the State where the property is located."). As we have noted, *supra*, Ms. Coluccio has alleged facts, which if proven, would demonstrate that she is the beneficiary of a constructive trust on the funds securing the cost bond. If she were the beneficiary of such a trust, then she would be "the equitable owner" of those funds. *See* I William F. Fratcher, *Scott on Trust* § 12.1 (4th ed. 1987). In such circumstances, Mr. Coluccio, as "trustee" of those funds, would not have a sufficiently significant interest in the *res* to warrant the Government executing against the funds. Accordingly, it is necessary to remand this case to the district court to determine if Ms. Coluccio has a constructive trust with respect to the funds securing the cost bond.

## CONCLUSION

We vacate the district court's order denying claimant's request to have the $2,500 cost bond returned to her and remand to the district court for further proceedings.

cites *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). *Russello* is similarly inapposite. Although the *Russello* Court noted that the definition of "interest" is broad enough to include a "benefit," *id.* at 21, 104 S.Ct. at 299 (citations omitted), it did so in the context of determining "whether profits and proceeds derived from racketeering constitute an 'interest' within the meaning of [18 U.S.C. § 1963(a)(1)]." *Id.* at 20, 104 S.Ct. at 299. The *Russello* Court held that "interest" includes not only the "racketeering enterprise" but also insurance proceeds derived from the arson activities of the enterprise. *Id.* at 22, 104 S.Ct. at 300. As in *Ray*, the benefit conferred in *Russello, i.e.,* the profit from an illegal venture, was far more direct and palpable than the transitory benefit received by Mr. Coluccio herein. The conclusion reached in *Russello* that the benefit of proceeds from an insurance policy was an "interest" does not support a finding that Mr. Coluccio had a substantial interest in the funds herein simply because he was permitted momentary use of the money to secure a cost bond. *Russello* is not instructive in our present inquiry.