UNITED STATES of America, Plaintiff,

v.

Ali HERBAWI Re: 599 Chili Avenue, Rochester, New York, Defendant.

No. 95–CR–6040L.

United States District Court, W.D. New York.

July 16, 1997.

■■■■■■■■■■■■■■■■■■

Bradley Tyler, United States Attorney Office, Rochester, NY, William J. Hochul, Jr., U.S. Attorney for the WDNY Federal Centre, Buffalo, NY, for Plaintiff.

William Clauss, Federal Public Defender, Rochester, NY, for Defendant.

LARIMER, Chief Judge.

This is a forfeiture proceeding regarding 599 Chili Avenue, Rochester, New York ("the property"). Ali Herbawi ("Herbawi") holds legal title to the property. Pending before the Court are the petitions of William F. McGrath ("McGrath") and Mahmoud Abed ("Abed"), which seek adjudication of their alleged interests in the property.

## FACTS

### A. Background

On November 25, 1996, Herbawi pleaded guilty to a money laundering conspiracy in this Court. Pursuant to his plea agreement, Herbawi agreed to forfeit any interest he had in the property as the record title holder, although at the time of the plea, Herbawi disclaimed any interest in or right to the property. A preliminary order of forfeiture was entered on January 27, 1997. Subsequently, McGrath and Abed filed petitions claiming an interest in the property, pursuant to 21 U.S.C. § 853(n).

McGrath is the holder of a Note and Mortgage executed by Ali Herbawi on July 2, 1992—the date McGrath transferred the property by deed to Herbawi. (Exs. C, D, N). The Government concedes that McGrath has a legal interest in the property as the first mortgagee and has agreed to exempt that interest from the order of forfeiture.

Abed claims that he is the equitable owner of the property, even though the legal title to the property is in Herbawi's name. The Government moved to dismiss Abed's petition. I denied the motion, finding that Abed had made a *prima facie* showing that he has an interest in the property, and ordered that a hearing be held to adjudicate his interest.

On its motion to dismiss, the Government argued essentially that Abed's interest in the property was merely an equitable interest, which did not constitute a "legal right, title, or interest in the property" under 21 U.S.C. § 853(n)(6)(A). According to the Government, Abed was not entitled to relief from this Court, but was required, instead, to petition the Attorney General for relief under 21 U.S.C. § 853(i).

■■■ In rejecting the Government's position, I determined that the phrase "legal right, title, or interest in the property" has been interpreted broadly to include both equitable and legal interests in forfeited property. *United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir.1992); *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir.1991); *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir.1987). Therefore, chose third parties who are able to demonstrate that they have a specific interest in the property, whether it be legal or equitable, may seek relief from the court adjudicating the forfeiture under 21 U.S.C. § 853(n). All other third parties who do not have a specific interest in the property, but merely assert general claims (such as general unsecured creditors), must seek relief from the Attorney General under 21 U.S.C. § 853(i). *See Lavin*, 942 F.2d at 185.

### B. Hearing Regarding Abed's Interest in the Property

At the hearing, which took place on June 30, 1997 and July 3, 1997, Abed testified and called three other witnesses, John Gatti, Miguel Reyes, and Herbawi. Numerous exhibits also were introduced. Other than cross-examining the petitioner's witnesses, the Government offered no evidence or witnesses in rebuttal and in defense of its claim to the property. I find that the evidence offered at the hearing fairly established the following:

John Gatti, the real estate broker for McGrath, showed the property to Abed on April 27, 1992. Abed then negotiated with Gatti regarding the purchase of the property. Ultimately, Abed, acting as power of attor-

ney for Ismail Sleem, entered into a purchase and sale contract for the property. (Ex. A). This deal, however, was never closed. (Ex. M).

A second contract for the sale of the property was executed on May 8, 1992 between Abed's uncle, Mohammed Salem Suleiman ("Suleiman"), and McGrath. (Ex. B). The terms of this contract provided for a $20,000 down payment and a $45,000 purchase money mortgage to be held by McGrath.

Abed attended the closing on July 2, 1992 with a power of attorney from Suleiman, (Ex. H), which was executed at the United States Consulate in Jerusalem, where Suleiman apparently then resided. Also present at the closing was Abed's uncle, Herbawi, who was familiar with powers of attorney that had been executed in foreign countries. Frank Maggio ("Maggio"), McGrath's attorney, refused to accept the power of attorney for execution of the purchase money mortgage, even though Miguel Reyes, Abed's attorney, assured him that it was valid. Maggio was concerned that Suleiman was unknown to him, did not live in this country, and provided little security should a law suit result from this transaction. At that point, it appeared the deal would not close. Abed did not want his name on the property because he had credit problems, including a dispute with a Brooklyn hospital regarding a $30,000 debt.

It was then suggested that the property be placed in Herbawi's name. Herbawi lived in Rochester, owned businesses here, and provided Maggio with some recourse should there be a default on the mortgage or other problems with the transaction. Abed and Herbawi had a conversation in Arabic and agreed that Herbawi would take the property in name only and that the true owner would be Abed. Abed testified that he trusted his uncle and was not concerned that Herbawi would later claim the property as his own.

The deal went forward with Herbawi's name substituted on the documents as the transferee from McGrath. Abed tendered the $20,000 down payment from checks he had received from his brother, Khalil Sleem. (Ex. PP). Herbawi executed the Note and Mortgage to McGrath, (Ex. D), in the amount of $45,000 for the balance of the purchase price.

Herbawi testified and confirmed Abed's version of the events surrounding the closing. He testified that the property was always intended to be Abed's and that he, Herbawi, only lent his name to facilitate the closing.

Shortly after the closing, Abed opened the Three Brothers Food Mart on the premises and has operated it, with the assistance of his sons, ever since. Abed has made all the mortgage payments. (*See, e.g.,* Exs. O–LL). Abed also has paid the property taxes, and, to the extent that they are in arrears, Abed currently is making monthly payments to the County. (Exs.MM–PP). Abed also has spent a considerable amount of money to repair, renovate, and improve the property. (*See, e.g.,* Exs. I–L).

Although the bank account for the store initially was in the name of "Ali Salem Herbawi D/B/A Three Brother Food Mart," all checks were written by Abed or his sons. (*See, e.g.,* Exs. DD–LL). Herbawi never deposited money into the store's account or wrote any checks from it. He received no income or benefit from operation of the store. On April 24, 1994, Herbawi granted Abed a power of attorney regarding the property and the store. (Ex. E). After that date, the bank account for the store was changed to the name of "Mahmoud S. Abed D/B/A Three Brothers Food Mart." (*See, e.g.,* Exs. O–CC, MM–OO).

In short, Herbawi has not paid any money for the property, has not received anything in return for putting his name on the property, and has not participated in the business in any way since it was opened by Abed.

## DISCUSSION

■ McGrath's claimed interest as the first mortgagee is uncontested by the Government. Therefore, I find that the evidence before me establishes by a preponderance that McGrath has a valid interest in the property as first mortgagee and that his interest is not subject to forfeiture. 21 U.S.C. § 853(n)(6)(B).

■ Abed claims an interest in the property under one of three theories: (1) that he is

the beneficiary of a resulting trust; (2) that he is the beneficiary of a constructive trust; or (3) that he has an equitable lien on the property. Although the real estate transaction in issue certainly was not the norm, I find that Abed has established by a preponderance of the evidence that he is the equitable owner of the property pursuant to a constructive trust. Therefore, Abed has a "a legal right, title, or interest in the property ... superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A).

■ " 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' " *Simonds v. Simonds,* 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978) (quoting *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919)). In the forfeiture context, courts have held that a constructive trust, if proven, may establish an interest in the property superior to that of the defendant. *See Schwimmer,* 968 F.2d at 1582; *United States v. Marx,* 844 F.2d 1303, 1308 (7th Cir.1988); *United States v. Campos,* 859 F.2d 1233, 1238–39 (6th Cir.1988).

■ Under New York law, a person must establish four elements before a court will impose a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment. *United States v. Coluccio,* 51 F.3d 337, 340 (2d Cir.1995); *In re Koreag, Controle et Revision, S.A.,* 961 F.2d 341, 352 (2d Cir.1992).

■ In the instance case, I find that Abed has satisfied all four elements. First, Abed shared the requisite confidential relationship with his uncle, Herbawi. Second, there was a stated mutual assumption that the property would be held by Herbawi in name only and that Abed would be the real owner. Third, Abed relied on that promise when he tendered the down payment, took possession of the property, made subsequent mortgage payments, paid the property taxes, and made improvements to the property. Fourth, the Government's forfeiture would force a breach of Herbawi's promise and result in unjust enrichment of the Government and unjust impoverishment of Abed. *See Coluccio,* 51 F.3d at 340.

Therefore, I find that although he is listed as legal owner, Herbawi was not the real owner of the property. He paid no consideration for the property and his name was utilized simply as a favor for Abed, his nephew. I accept the testimony that Abed and Herbawi trusted each other and that there was no need for any writing between them to memorialize their arrangement.

## CONCLUSION

For the foregoing reasons, I determine that McGrath has a valid interest in the property, as a first, purchase money mortgagee and that his interest is not subject to forfeiture. I determine that Abed also has a valid interest in the property, as the equitable owner pursuant to a constructive trust, and that his interest is not subject to forfeiture. I further find that Herbawi has no forfeitable interest in the property. To the extent that Herbawi has a colorable interest because he was listed as the purchaser of the property, in a deed transferred July 2, 1992, and therefore appears as the record legal title holder to the property, Abed's interest is superior to any right, title, or interest of Herbawi.

I further determine that the preliminary order of forfeiture entered January 27, 1997 is invalid and must be amended and vacated insofar as it directs forfeiture of the property to the Government.

I further direct the parties to prepare a stipulated final Judgment, which properly reflects the Court's decision and the interests of the parties, and to promptly file such Judgment to effect removal of any lien or encumbrance placed on the property by virtue of the preliminary order of forfeiture. If the parties are unable to agree to a stipulated final Judgment, within twenty (20) days of entry of this Decision and Order, any

interested party may move the Court, on notice, to settle the final Judgment.

IT IS SO ORDERED.